**Henry TILLBERRY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0803–CR–145.**

Court of Appeals of Indiana.

Oct. 31, 2008.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Henry Tillberry appeals the revocation of his probation. Because he was not afforded due process and because the trial court's findings are unsupported by evidence, we must reverse.

## FACTS AND PROCEDURAL HISTORY

On December 2007, Tillberry pled guilty to Class A misdemeanor criminal mischief. His sentence included 345 days of probation, which was scheduled to begin on December 20, 2007.

On January 31, 2008, the State filed a Notice of Probation Revocation that alleged Tillberry:

1. failed to report to the Probation Department as directed.

2. failed to submit his baseline urine screen on 1/3/08.

3. failed to make any payment toward his Court ordered financial obligation.

(App. at 29.) It also included a factual statement:

On 1/7/08, the probationer failed to report for his first probation appointment as directed. Therefore, this officer called his last reported phone number and left a message for him to contact the Probation Department and reschedule. The probationer returned the call and was rescheduled for 1/14/08. However, he again failed to report so a Failed to Report letter was sent to his last reported address to reschedule him for 1/23/08.

Once again, the probationer failed to report for his appointment and as of this date, he has not contacted this officer to reschedule.

On 1/3/08, the probationer was directed at intake to submit his baseline urine drug screen that day. However, he failed to report for his urine drug screen and has not returned to submit since.

During the initial intake interview, the probationer agreed to make monthly payments of $53.00. As of this date, he has not made any payment toward his debt and has a balance of $530.00.

(*Id.*) On February 8, 2008, the State filed an Amended Notice of Probation Violation that added the following allegation:

[O]n or about 02/07/08, [Tillberry] was arrested for Possession of Marijuana or Hash/MA and Possession of Marijuana or Hash/FD under cause number 49F 18–0802–FD–033935. He is being held on a $10,000 Surety Bond and a Bond Review is set for 02/08/08 9a.m. [sic] in Court 18.

(*Id.* at 30.)

On February 8, 2008, Tillberry appeared with counsel for an initial hearing, which consisted of the following:

**The Court:** Henry Tillery [sic]. All right . . .

**[Pub. Def.]:** Again Mr. Tillery [sic] has a violation of probation and so much like Mr. Edwards; we'll set this for Tuesday.

**[Tillberry]:** Ma'am?

**The Court:** When's the last time you've been to probation?

**[Tillberry]:** I just started probation and if you look on your paper, I ain't trying to tell you how to do your job but . . .

**The Court:** Well you just did.

[Tillberry]: No, I . . .

The Court: I will see you Tuesday, February 12th in the morning.

[Tillberry]: So inaudible I was in here when I was suppose to be at probation. That's how I got the . . .

The Court: You were in custody?

[Tillberry]: Yes ma'am.

The Court: Well, what were you in custody for?

[Tillberry]: I had an out of county warrant that I've been fighting since '99.

The Court: Tuesday.

Unidentified: He has a new case in Court 18.

The Court: You've got a new case in Court 18. You could see what killed him right away, ask him a question and he went someplace else.

[Pub. Def.]: Not a problem Your Honor, thank you.

(Tr. at 3–4.) On Tuesday, the following dialogue occurred:

Bailiff: Henry Tillberry.

The Court: When's the last time Mr. Tillberry's been to probation?

[Probation]: He reported for his intake appointment only which was on January third and we haven't heard from him since.

The Court: And he has a new case.

[Probation]: Yes.

The Court: Anything to say?

[Pub. Def.]: Your Honor, I believe he was in custody, when were you in custody after that point?

[Tillberry]: The fifteenth.

[Pub. Def.]: The fifteenth of?

[Tillberry]: January. I talked to my probation officer Travis Nacke, Travis Nacke I think is the name and I was suppose to have reported on the twenty-fifth and I was in jail in Putnam County for an old case.

[Pub. Def.]: So he was unable to report to probation for that reason.

The Court: Okay, when were you; in what county?

[Tillberry]: Putnam.

The Court: When were you in the Putnam County Jail?

[Tillberry]: From the fifteenth . . .

The Court: Of what?

[Tillberry]: January.

The Court: To when?

[Tillberry]: The thirtieth. Then I had to walk back from there to here.

The Court: Okay so what happened between December tenth and January fifteenth?

[Tillberry]: December tenth?

The Court: Um-huh, that's when you were convicted, where you did a plea.

[Tillberry]: I was in Putnam County again.

[Pub. Def.]: I believe it started the twentieth of December.

[Tillberry]: Cause when I go to Putnam County they keep; and when I come here and I have a court in Putnam County like Monday, this coming Monday I'm suppose to be in Putnam County, if I'm not there they'll issue a failure to appear.

The Court: Since December tenth what dates were you in Putnam County Jail?

[Tillberry]: I'm not sure exactly what dates. I know I got out like the fifth, the twenty-fifth, right before Christmas on the twenty-third. From the fifteenth to the twenty-third.

The Court: What month?

[Tillberry]: December.

The Court: Anything else?

**[Pub. Def.]:** Your Honor, I would just ask that he have a chance to go to probation as . . .

**[Tillberry]:** Cause I just bought me a new house, I'm trying to get my house together.

**The Court:** Probation revoked, defendant failed to show up for probation appointments after intake and he has a new case. 345 days. Does he have any credit?

**[Reporter]:** Six days.

**The Court:** Six days credit.

**[Probation]:** Your Honor, there's a $530 balance.

**The Court:** Civil Judgment for $530. Thank you very much.

(*Id.* at 8–10.)

## DISCUSSION AND DECISION

 Tillberry argues his hearing did not comport with due process[1] and, therefore, the State did not provide any evidence to support the revocation. We agree.[2]

 "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. The trial court determines the conditions of probation and may revoke probation if the conditions are violated." *Prewitt v. State*, 878 N.E.2d 184, 187 (Ind.2007).

Nearly twenty years ago, this court addressed the propriety of revoking probation following a "hearing" similar to Tillberry's. *Dalton v. State*, 560 N.E.2d 558 (Ind.Ct.App.1990). Dalton's "hearing" consisted of the following:

A tete a tete occurred in front of the bench. The record shows five people were present in court: Dalton, his attorney, the prosecutor, a probation officer, and the trial judge. The "hearing" consisted of a conversation between these parties. The State introduced no witnesses to meet its burden of proving the

---

1. We note that Tillberry did not object at the revocation hearing to the manner in which the court conducted the hearing. Generally, if an issue is not objected to at trial, it may not be raised on appeal. *Townsend v. State*, 632 N.E.2d 727, 730 (Ind.1994). "However, we may bypass an error that a party procedurally defaults when we believe that the error is plain or fundamental. To qualify as 'fundamental error,' the error must be a substantial blatant violation of basic principles rendering the trial unfair to the defendant." *Id.* (quoting *Hart v. State*, 578 N.E.2d 336, 337 (Ind.1991)). Deprivation of due process is fundamental error. *Goodwin v. State*, 783 N.E.2d 686, 687 (Ind.2003) (defendant's friends' testimony did not fall under fundamental error exception because it did not amount to a deprivation of fundamental due process); *Dalton v. State*, 560 N.E.2d 558, 560 (Ind.Ct.App.1990) (failure to hold evidentiary hearing prior to revoking probation violates "due process rights and constitutes fundamental error").

Recently, in *Woods v. State*, 892 N.E.2d 637, 641 (Ind., 2008), our Supreme Court found a trial court erred at a probation revocation hearing when it did not permit Woods to explain why his admitted violation should not result in revocation of probation. Nevertheless, the Court affirmed the revocation because Woods did not make an offer of proof. *Id.* That result suggests Woods had an evidentiary hearing; a "trial court *ruling excluding evidence*" may not be challenged on appeal unless "the substance of the evidence was made known to the court by a proper offer of proof." *Lashbrook v. State*, 762 N.E.2d 756, 758 (Ind.2002) (emphasis supplied). Tillberry, by contrast, was not afforded an evidentiary hearing, as no witnesses were sworn and no other evidence was admitted. We accordingly find *Woods* distinguishable.

2. The State does not acknowledge that Tillberry did not receive due process at his hearing. Rather, the State asserts the unsworn comments of the probation officer and Tillberry, along with the allegations in the Notice of Probation Violation, were sufficient to support revocation. For the reasons explained herein, we decline to adopt the State's position.

allegations by a preponderance of the evidence. There is nothing to indicate that Dalton was afforded the opportunity to cross-examine the State's "witnesses" or to present evidence on his behalf. The closest the hearing came to an evidentiary proceeding was when the trial judge called Dalton to the stand, swore him in as a witness, and asked him his name, how old he was, and where he worked. At this point the trial judge resumed asking questions of the attorneys and the probation officer. Satisfied Dalton had indeed violated the terms of his probation, the trial judge turned to lecture the defendant informing him his probation would be revoked.

*Id.* at 560. On appeal, Dalton challenged the sufficiency of evidence to support his conviction, but we reframed the issue as whether the trial court conducted "the type of probation revocation hearing required by federal and Indiana law (Ind. Code 35–38–2–3) (1988) to afford Dalton his due process rights." *Id.* at 559.

We noted Indiana Code § 35–38–2–3 requires the court to "conduct a hearing," requires the State to "prove the violation by a preponderance of the evidence," and requires "evidence . . . be presented in open court" to allow "confrontation [and] cross-examination." *Id.* In summarizing those statutory requirements we stated: "No mystery here. An *evidentiary* proceeding must be conducted." *Id.* (emphasis in original).

■ As for federal law, we noted "the United States Supreme Court has favored us with the conclusion that because a probation revocation results in a loss of liberty, the probationer must be given certain due process rights before his probation may be revoked." *Id.* at 559–60 (citing *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). Proba-

tioners are entitled to "the same due process rights as a parolee":

(a) written notice of the claimed violations of parole;

(b) disclosure to the parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.

*Id.* at 560 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). We concluded:

The law relating to the conduct of revocation proceedings is not new. *Gagnon* was decided in 1973, *Morrissey* in 1972, and IC 35–38–2–3 has required an *evidentiary* hearing since 1983. Also in 1983, this district wrote *Gee v. State* (1983), Ind.App., 454 N.E.2d 1265, in which informal proceedings of the type held in this case were criticized. *Id.* at 1267, n. 6.

In view of what happened here, it is apparent that Dalton's probation was revoked without the court first holding an evidentiary proceeding as mandated by law. We can only conclude that the failure to hold such an evidentiary hearing violated Dalton's due process rights and constitutes fundamental error, requiring reversal of the trial court's judg-

ment. *See Morrissey, supra; Gagnon, supra.*

*Id.* (footnote omitted).

Similarly, in *Weatherly v. State,* 564 N.E.2d 350 (Ind.Ct.App.1990), Weatherly appealed the revocation of his probation claiming the evidence was insufficient to support revocation because "no witnesses, except Weatherly, were sworn to testify, and no evidence, as such, was presented in support of the allegations contained in the revocation petition." 564 N.E.2d at 351. We reiterated the law outlined in *Dalton* and held: "An informal conversation between the judge and the parties present is insufficient under both the statute and due process concepts." *Id.* at 352.

We also determined the State had not presented any evidence to support the finding Weatherly violated any conditions of probation. *Id.* We reach a similar result when we consider the court's findings regarding Tillberry.

 The amended petition to revoke Tillberry's probation alleged he had been arrested for possession of marijuana, and the trial court revoked his probation in part because "he has a new case." (App. at 10.) However, "an arrest standing alone will not support the revocation of probation." *Weatherly,* 564 N.E.2d at 352. "Evidence must be presented from which the trial judge could reasonably conclude that the arrest was appropriate and that there is probable cause to believe the defendant violated a criminal law before the revocation may be sustained." *Id.* The record before us is devoid of evidence regarding the circumstances leading to Tillberry's arrest for possession of marijuana; thus, there is no evidence from which the trial court could have found probable cause to believe Tillberry committed a crime while on probation. Because there is insufficient evidence to support such a find-

ing, revocation on that basis was error. *See id.*

■ The other violation the court found to support revocation of Tillberry's probation was he "failed to show up for probation appointments after intake." (Tr. at 10.) The only statement at the hearing relevant to that finding was an unsworn comment by the representative of the probation office: "He reported for his intake appointment only which was on January third and we haven't heard from him since." (*Id.* at 8.) Even if we were to consider that unsworn comment evidence, it demonstrates only that the Probation Office did not hear from Tillberry after his intake. It does not demonstrate that he had appointments scheduled or that he missed any appointments. Accordingly, to find Tillberry "failed to show up for probation appointments" the court had to assume facts that were not in evidence.

The informal conversation between the judge and parties at a hearing on the State's Notice of Probation Violation not only failed to comport with Tillberry's right to due process at a probation revocation, it also failed to elicit evidence to support by a preponderance of evidence the finding there had been two violations. Therefore, we reverse the revocation of Tillberry's probation. *See Eckes v. State,* 562 N.E.2d 443 (Ind.Ct.App.1990) (where only evidence of commission of crime by probationer was judicial notice of another proceeding, without supporting documents or testimony, revocation of probation violated due process).

Reversed.

NAJAM, J., and ROBB, J., concur.